IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIRGINIA D., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI,[2] <br> Acting Commissioner of Social Security, <br><br> Respondent. | No. 19 C 3341 <br><br> Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Virginia D.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. *See* [ECF No. 9]. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Claimant filed a Memorandum in Support of Summary Remand [ECF No. 15], and the Commissioner filed a Motion for Summary Judgment [ECF No. 16]. This matter is fully briefed and ripe for review.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using her first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

For the reasons discussed this Memorandum Opinion and Order, the Court grants Claimant's Memorandum in Support Summary Remand [ECF No. 15] and denies the Commissioner's Motion for Summary Judgment [ECF No. 16]. This matter is remanded to the Social Security Administration for further proceeding consistent with the Court's Memorandum Opinion and Order.

## PROCEDURAL HISTORY

Claimant filed her application for disability insurance benefits on September 26, 2016, alleging a disability onset date beginning June 16, 2015.[3] (R. 15). Her application was denied initially on November 22, 2016, and upon reconsideration on February 22, 2017. (R. 15). On March 8, 2017, Claimant submitted a written request for a hearing before an Administrative Law Judge ("ALJ"). (R. 15). Claimant appeared and testified at a hearing held on May 22, 2018 before ALJ Joel Fina. (R. 15, 28-64). At the hearing, Claimant was represented by attorney Justin Poh. (R. 15). During the hearing, the ALJ also heard testimony from Ashok G. Jilhewar, M.D., an impartial medical expert, and Aimee Mowery, a vocational expert. (R. 15).

On September 4, 2018, the ALJ issued his decision denying Claimant's application for disability insurance benefits. (R. 15-22). In finding Claimant was not disabled within the meaning of the Act, the ALJ followed the five-step evaluation process required by Social Security Regulations for individuals over the age of 18. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of June 16, 2015 through her

---

[3] Claimant previously filed for disability insurance benefits in 2013. That claim was denied on June 15, 2015, and the Appeals Council declined to review the denial of benefits. (R. 67).

2

date last insured of March 31, 2017. (R. 17). At step two, the ALJ found that Claimant has severe impairments, including chronic pain secondary to degenerative joint disease of the left shoulder, right and left lateral tennis elbow debridement with repair, degenerative joint disease of the left ring finger, status post ligament reconstruction, low back pain with muscle spasm, obesity, and diabetes mellitus, not well controlled. (R. 17).

At step three, the ALJ concluded Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. 18). The ALJ then found Claimant has the residual functional capacity ("RFC")[4] to perform light work as defined in 20 C.F.R. § 404.1567(b). Specifically, the ALJ explicitly found that Claimant "could lift up to twenty pounds occasionally and lift or carry up to ten pounds frequently. She could stand or walk for approximately six hours per eight hour workday and sit for approximately six hours per eight hour workday, with normal breaks. The claimant could frequently operate foot controls. She could not climb ladders, ropes, or scaffolds. She could frequently climb ramps or stairs, balance, stoop, crouch, kneel, and crawl. The claimant could frequently reach, handle objects (defined as gross manipulation), and finger item (defined as fine manipulation). The claimant has to avoid all exposure to unprotected heights." (R. 18).

---

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-676 (7th Cir. 2008).

3

At step four, the ALJ found that Claimant was not capable of performing her past relevant work. (R. 20). After listening to the testimony of the vocational expert and considering Claimant's age, education, work experience and RFC, the ALJ concluded at step five that there are jobs that exist in significant numbers in the national economy that Claimant could perform. (R. 21). Based on all of these reasons, the ALJ found Claimant was not disabled as defined in the Social Security Act through March 31, 2017, the date last insured. (R. 22).

On August 29, 2018, Claimant timely filed a request for review. (R. 146). The Appeals Council declined to review the matter on March 21, 2019 (R. 1-4), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. See 42 U.S.C. § 405(g); see also Smith v. Berryhill, 139 S.Ct. 1765, 1775 (2019); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. See Sims v. Apfel, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. See Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek*, 139 S.Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the ALJ's findings will not be upheld if there is not "an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

In explaining his decision, the ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but he must build a logical bridge from the evidence to his conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). An ALJ's analysis of a claimant's RFC "must say enough to enable

review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). In this case from Claimant's perspective, the ALJ improperly discounted her subjective complaints of pain and did not address record evidence that supported those complaints. In her view, the ALJ also used boilerplate and conclusory language in describing his decisional process, which is not enough to support his conclusions or to tie those conclusions to the record evidence. Claimant argues that the ALJ's rote summary of the objective medical evidence and the medical opinions, standing alone, is legally insufficient to support his boilerplate statements and conclusions. In response, the Commissioner argues that although the ALJ "may not have provided the level of explanation [Claimant] preferred, a fair reading of the ALJ's decision shows that he sufficiently articulated and supported his subjective symptoms analysis" and his decision should be affirmed. Commissioner's Resp., [ECF No. 17], at 3.

    The Court is not persuaded by the Commissioner's arguments and agrees with Claimant that the ALJ's explanation for his decision in this case is legally insufficient. That does not mean the Court agrees with Claimant that she is disabled and cannot work within the meaning of the applicable law. Rather, it means that the ALJ did not explain his decisional process or his analysis of the record evidence sufficiently for the Court to be able to conclude that his ultimate decision is supported by substantial evidence under the controlling standard of review. The Court is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for

that of the ALJ's by reweighing the evidence. Although this standard is generous, it is not entirely uncritical. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.2000). When an ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," as is the case here, the case must be remanded. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

In his written opinion, the ALJ began his analysis with the familiar language used by many ALJs: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the allege symptoms; however, these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R.19). Next, the ALJ provided a brief recitation of Claimant's medical history and discussed some specific treatment records. (R. 19). The ALJ then summarized the opinions of the state agency physicians, Drs. Reynaldo Gotanco and Vidya Madala, and the testimony provided by the medical expert, Dr. Ashok Jilhewar, who testified at the hearing and opined that Claimant should be "limited to light work due to her combination of impairments." (R. 20). The ALJ explained that he "accepts and gives great weight to Dr. Jilhewar's opinion" and "significant weight is given to the opinions of from the non-examining state agency consultants." (R. 20). Finally, the ALJ concluded: "In sum, the above residual functional capacity assessment is supported by the evidence of record including the clinical evidence. In reaching this determination, the claimant's subjective complaints have been taken into account, both individually and in combination." (R.

20). After reading the ALJ's conclusion, however, this Court is left with two important and dispositive questions: (1) how does the clinical evidence support the ALJ's RFC assessment; and (2) how does the ALJ account for Claimant's subjective complaint in that RFC assessment? Nowhere does the ALJ answer these questions.

It is well-settled law that mere boilerplate statements and conclusions cannot support an ALJ's decision and that the ALJ must set forth "specific reasons" for discounting subjective reports of symptoms. *See Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009), citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *Steele v. Barnhart*, 290 F.3d 936, 941-42 (7th Cir. 2002). When assessing subjective symptoms, the ALJ should consider a variety of factors, including objective medical evidence, daily activities, location, duration, frequency and intensity of pain, precipitating and aggravating factors, use of medication, and the consistency of the claimant's statements. *See* Social Security Regulation 16-3p, 2016 WL 1119029, at *7. Without providing any "specific reasons," discussing at least some, if not all, of these factors, or explaining how and why the ALJ concluded that Claimant is able to perform light work notwithstanding her subjective symptoms and complaints, the Court cannot say whether the ALJ's decision is supported by substantial evidence and whether the ALJ reasonably evaluated Claimant's subjective complaints.

The Commissioner attempts to provide a more detailed explanation of the ALJ's analysis than did the ALJ, and to explain how the opinions of the state agency reviewing physicians and the medical expert provide support for the ALJ's RFC assessment. Commissioner's Resp. [ECF No. 17], at 3-9. While ultimately the

Commissioner may be correct in his evaluation of the evidence and how it supports the ALJ's conclusion, the problem is that this Court must consider solely what the ALJ said, or did not say as the case may be, when determining whether a decision is supported by substantial evidence. The Commissioner's post-hoc attempt to substantiate the ALJ's decision cannot save the day here.

The Court finds it noteworthy that the written portion of the ALJ's opinion that purportedly provides the requisite support for his decision (a summary of some of the medical evidence) is just over one page single-spaced while the Commissioner uses over seven pages double-spaced to try to justify the ALJ's sparse explanation. The Commissioner's explanation, however, is not what the Court must review. For example, the Commissioner argues that the ALJ considered that many of Claimant's "impairments are longstanding issues." (R.19). The Commissioner then proceeds to provide citations in the record to support the ALJ's statement that Claimant's impairments have existed since 2009, 2010 and 2011. The Commissioner seems to suggest that because Claimant has had at least some of these impairments for many years and that she previously had applied for and been denied disability insurance benefits, her claims of severe impairment are not well-founded and do not support a finding of current disability because a previous ALJ (and reviewing court) rejected those claims. The Court acknowledges that could be some explanation for the ALJ's determination as the Commissioner seems to suggest. The problem is that ALJ does not say that; the Commissioner does. This Court must consider only the ALJ's

explanation for his decision to find a claimant not disabled. In this case, the ALJ's opinion is sorely lacking in that respect.

The Commissioner contends the underlying premise of Claimant's argument is that she would have preferred a better explanation, but that is an oversimplification of Claimant's argument. It is not a preference for a different or better explanation, but rather the lack of any explanation at all. Claimant argues, and the Court agrees, that the ALJ did not provide any explanation, or provided only a perfunctory one at best, as to how he weighed the evidence, and therefore, the Court cannot determine whether the ALJ's conclusions are logical and reasonably supported by the evidence. Simply put, the Court simply does not know how the ALJ weighed the evidence or what parts of the record he relied upon to deny full credit to Claimant's subjective complaints.

There also is some evidence in the record that the ALJ does not address that the Court finds relevant or at a minimum requires an explanation as to why such evidence does not contradict or conflict with the ALJ's RFC assessment. Neither the ALJ nor Dr. Jilhewar, for example, discussed the fact that an MRI revealed degenerative facet disease and right neural foraminal narrowing at the C5-C6 and C6-C7 levels of Claimant's cervical spine (R. 465), or that she "has cervical radiculopathy" that causes pain "going down her arms." (R. 489). Nor did either Dr. Jilhewar or the ALJ address the fact that Claimant previously and repeatedly had been restricted from repetitive use of her hands and arms before she stopped working completely. *See* (R. 564, 611, 616, 628, 629). While the ALJ did limit Claimant to

10

"frequent" use of her hands for fine manipulation (R. 18), that does not address the question of repetitive use. In the Social Security Regulations, "frequent" is defined as "occurring from one-third to two-thirds of the time" or "a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6. It is not clear to the Court, and the ALJ does not provide any explanation or ask the vocational expert to opine, how an individual who previously has been restricted from repetitive use of her hands is able to frequently use her hands for fine manipulation for approximately 6 hours of an 8-hour workday.

Because the Court cannot decipher how the ALJ reached his conclusions, it cannot connect the dots to determine whether there is substantial evidence to support those conclusions, and the Court will not speculate about that important issue. Ultimately, a mere recitation of the contents of Claimant's medical records, treatment history, and a statement that Claimant's "subjective complaints have been taken into account, both individually and in combination" (R. 20) without any explanation how Claimant's complaints have been taken into account is not legally sufficient and does not provide any logical bridge between the evidence and the conclusion Claimant was not disabled. Therefore, remand is required.

In conclusion, the Court emphasizes that it is not expressing any opinion about the decision to be made on remand, but it encourages the ALJ to do what is necessary to build a logical bridge between the evidence in the record and the ALJ's ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in

the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Memorandum in Support Summary Remand [ECF No. 15] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 16] is denied. This matter is remanded to the Social Security Administration for further proceeding consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 21, 2021